UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **NADIA RASOLI**, | |
| Plaintiff, | Civil Action No. _____ |
| | District Judge: _____ |
| v. | |
| | Magistrate Judge: _____ |
| **SPRING HOMECARE CORPORATION**, | |
| 5101G Backlick Rd., Unit C27 | |
| Annadale, VA 22003 | |
| | |
| **GREEN GARDEN HOME CARE CORPORATION**, | |
| 7005 Backlick Ct., Unit A100 | |
| Springfield, VA 22151 | |
| | |
| and | |
| | |
| **SHAKIBA HAKAMI** | |
| 7984 Sabina Ct. | |
| Springfield, VA 22153 | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

COMES NOW, the Plaintiff Nadia Rasoli ("Plaintiff"), by and through her undersigned counsel, and moves this Honorable Court for judgment against the Defendants, Spring Homecare Corporation ("Spring"), Green Garden Home Care Corporation ("Green"; Spring and Green, collectively, the "Companies"), and Shakiba Hakami ("Ms. Hakami; the Companies and Ms. Hakami, collectively, "Defendants"), for damages and other relief relating to violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), including in their respective capacities as joint employers of Plaintiff, and for defamatory statements published to multiple, third parties. Plaintiff states the following as her claims against Defendants:

1

## OVERVIEW

1. Plaintiff brings claims to recover unpaid overtime compensation under the FLSA.

2. As described below, Defendants failed to pay Plaintiff 1.5 times her regular rate of pay for all hours worked over forty (40) in a workweek. By doing so, Defendants violated the FLSA.

3. Specifically, Spring failed to pay Plaintiff 1.5 times her regular rate of pay for all hours worked over forty (40) in a workweek, irrespective of Green.

4. Green, conversely, was a joint employer of Plaintiff, and/or an alter ego of Spring, and Spring and Green jointly caused Plaintiff to work substantial overtime hours jointly for them without proper compensation under the FLSA at the direction of the Ms. Hakami, the Companies' primary owner and Plaintiff's direct supervisor.

5. In addition, after Plaintiff resigned from Defendants' employ, Defendants published multiple, defamatory remarks in an attempt to retaliate against Plaintiff for her resignation.

## PARTIES

6. Plaintiff is, and at all times relevant hereto has been, an adult resident of the Commonwealth of Virginia, specifically residing in Manassas, Virginia.

7. Plaintiff was a former employee of Spring as a Home Health Aide ("HHA") and/or Personal Care Assistant ("PCA") for several years until May 16, 2022, the date Plaintiff resigned.

8. Plaintiff was a former employee of Green as an officer manager for many years until April 22, 2022, the date Plaintiff resigned.

9. Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

10. Spring is a Stock Corporation incorporated in and existing under the laws of the Commonwealth of Virginia, State Corporation Commission Entity ID 07909914. Spring's

principal office is located at 5101G Backlick Rd., Unit C27, Annadale, Virginia 22003, located in Fairfax County, Virginia.

11. Green is a Stock Corporation incorporated in and existing under the laws of the Commonwealth of Virginia, State Corporation Commission Entity ID 07689854. Green's principal office as listed on Virginia's State Corporation Commission is located at 7003 Backlick Ct., Ste. 200, Springfield, Virginia, 22151, located in Fairfax County, Virginia. However, Green, without notifying Virginia's State Corporation Commission, has moved to 7005 Backlick Ct., Unit A100, Springfield, VA 22151, also located in Fairfax County, Virginia.

12. The Companies are home health care agencies that provides in-home health care services and related personal care assistant services for children and adults primarily in the Commonwealth of Virginia.

13. The Companies are listed separately on Plaintiff's pay stubs.

14. The Companies each are or have been an enterprise engaged in commerce or in the production of goods or services for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produce for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, each of the Companies has had an annual gross volume of sales made or business done of not less than $500,000.00 at all relevant times hereto.

15. Ms. Hakami is, and at all times relevant hereto has been, an adult resident of the Commonwealth of Virginia, specifically residing in Springfield, Virginia.

16. At all times, Ms. Hakami, individually, held a substantial ownership and financial interest in both Companies and their business operations.

17. At all times, Ms. Hakami, individually, was the most senior officer and manager of each of the

Companies and had substantial control to make business decisions affecting the Companies' business operations and the employees working for the Companies.

18. Ms. Hakami oversaw and controlled the Companies' employee's work schedules and work hours.

19. Ms. Hakami set and had the power to change the Companies' employees rate and method of pay.

20. Ms. Hakami was Plaintiff's direct supervisor.

21. At all times, Ms. Hakami, decided to not pay the Spring HHA/PCA employees at the FLSA required time-and-one-half rate for overtime hours employees worked over forty (40) each week.

22. At all times, Ms. Hakami caused Plaintiff to work an additional forty (40) hours per week for her other company, Green, in addition to the forty (40) hours and overtime hours worked for Spring per week.

23. At all relevant times hereto, Defendants have been an "employer" Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

24. Plaintiff was an individual employee engaged in commerce or in the production of goods or services for commerce pursuant to 29 U.S.C. § 207.

25. Plaintiff worked principally in Fairfax County, Virginia while working as an employee of Defendants.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, because Plaintiff's claims arise under the FLSA.

27. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's claims are so related to the claims within the Court's original

jurisdiction that it forms the part of the same case or controversy.

28. This Court has personal jurisdiction over the Companies because each is registered as a business entity in Commonwealth of Virginia, and each regularly conducts business in the Commonwealth of Virginia.

29. This Court has personal jurisdiction over Ms. Hakami as she owns and operates the Companies in the Commonwealth of Virginia and she resides in Springfield, Virginia.

30. Venue is proper in this District and Division under 28 U.S.C. § 1391(b), as Defendants reside in this District and Division (Fairfax County), and 28 U.S.C. § 1391(b)(2), the latter because a substantial part of the events giving rise to the claims occurred in this District and Division.

## **STATEMENT OF FACTS**

31. Plaintiff worked for Spring and Ms. Hakami as an HHA/PCA to provide companionship and related in-home care services for their clients.

32. Plaintiff contemporaneously worked for Green and Ms. Hakami as an office manager.

33. The Companies are joint employers of Plaintiff. Employment of Plaintiff by Spring is not completely dissociated from employment by Green. Objectively, the Companies have an unambiguous association. Both Companies provide exactly the same or extremely similar services; Ms. Hakami owns and manages both Companies; and Ms. Hakami is Plaintiff's direct supervisor.

34. Joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the particular workweek.

35. Accordingly, the hours an individual works for each joint employer in a single workweek must be aggregated to determine whether and to what extent the individual must be paid overtime to comply with the FLSA.

36. Defendants knowingly caused and permitted Plaintiff to regularly work more than forty (40) hours in workweeks.

37. At all times, Defendants decided to not pay Plaintiff at the FLSA required time-and-one-half rate for overtime hours employees worked over forty (40) hours each week.

38. At all times, Defendants have had actual knowledge of all hours Plaintiff worked because Plaintiff's paystubs correctly stated all hours worked during the pay period.

39. Plaintiff was not compensated in accordance with the FLSA because she was not paid proper overtime wages and the required time-and-one-half rate for all hours more than forty (40) per workweek.

40. Specifically, rather than paying Plaintiff at the time-and-one-half rate for all hours worked over forty (40) in a workweek, which is required by the FLSA, Spring initially paid Plaintiff only "straight time" (same hourly rate regardless of number of hours worked) for overtime hours worked over forty (40) hours per week. *See* 29 U.S.C. § 207.

41. More specifically, Spring paid Plaintiff "straight time" for overtime hours worked over forty (40) hours per week from at least July 15, 2019 through late 2020. An example of Plaintiff's paystub illustrating "straight time" is attached hereto as **Exhibit A** and incorporated herein by such reference.

42. The paystub in **Exhibit A**, dated August 21, 2020, for the 13 day pay period starting August 3, 2020 and ending August 16, 2020, illustrates that Plaintiff worked 98 hours in 13 days, which at worst consisted of 18 hours of overtime pay (assuming at least 40 hours per week over 2 weeks). Plaintiff's regular rate of pay identified therein was $12.00 per hour. Plaintiff, pursuant to the FLSA, should have received $18.00 per hour for the 18 hours of overtime pay. She did not. Plaintiff received her regular rate of pay at $12.00 per hour for those 18 hours of overtime in direct violation

of the FLSA. Plaintiff is owed $6.00 for every overtime hour worked from January 15, 2019 through late 2020.

43. Beginning in late 2020, Defendants concocted a unique scheme to knowingly circumvent paying to Plaintiff and those similarly situated overtime correctly as required by the FLSA. This was an intentional and institutionalized structure which was overseen by Ms. Hakami.

44. Beginning in late 2020, Spring began paying Plaintiff an extra $2.00 per hour over her hourly rate for hours worked over forty (40) hours in a given week as designated on the applicable paystub as "O/TIME – HRLY". This meant that Plaintiff received $14.00 per hour for those hours over forty (40) hours worked in a given week as designated by Defendants as overtime hours. Such amount was still $4.00 per hour less than $18.00 per hour, the required statutory rate of time-and-a-half which the FLSA requires. Plaintiff is owed $4.00 per hour for every overtime hour designated as O/TIME – HRLY" worked for Spring from late 2020, when this scheme was implemented in place of "straight time" payments, through March 13, 2022.

45. In addition to paying Plaintiff less than one-a-half-times their regular rate of pay through this concocted scheme, Defendants also implemented a new category of pay in late 2020 designated on its employees paystubs as "RESP – HRLY", representative of respite care services paid to Spring through Medicaid. This rate was set by Defendants at a rate $2.00 lower than Plaintiff's regular rate of pay. Such amount was $8.00 per hour less than $18.00 per hour, the required statutory rate of time-and-a-half which the FLSA requires. Plaintiff is owed $8.00 per hour for every overtime hour designated as "RESP – HRLY" worked for Spring from late 2020, when this scheme was implemented in place of "straight time" payments, through March 13 2022.

46. An example of Plaintiff's paystub illustrating the concocted scheme beginning in late 2020 is attached hereto as **Exhibit B** and incorporated herein by such reference.

47. The paystub in **Exhibit B**, dated October 30, 2020, for the 13 day pay period starting October 12, 2020 and ending October 25, 2020, illustrates that Plaintiff worked 110 hours for Spring in 13 days, which at worst consisted of 30 hours of overtime pay (assuming at least 40 hours per week over 2 weeks). Plaintiff's regular rate of pay identified therein was $12.00 per hour. Plaintiff, pursuant to the FLSA, should have received $18.00 per hour for the 30 hours of overtime pay, however classified. She did not. Plaintiff received $14.00 per hour for 18 overtime hours designated as "O/TIME – HRLY" and a mere $10.00 per hour for 12 overtime hours designated as "RESP – HRLY", both in direct violation of the FLSA.

48. Pursuant to the FLSA, 29 U.S.C. § 207, employers are generally required to pay overtime compensation at a rate of time-and-one-half an employee's regular rate of pay for hours worked over forty (40) in a workweek.

49. There are, however, exemptions from this requirement, including the so-called "white collar" exemption for workers "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

50. Plaintiff was not employed in any of these capacities, and even if Defendants were to argue that Plaintiff was employed in administrative capacity, such position equally fails.

51. Pursuant to 29 C.F.R. § 541.200, stated in pertinent part, the term "employee employed in a bona fide administrative capacity" means any employee (i) compensated on a salary or fee basis pursuant to 29 C.F.R. § 541.600 at a rate of not less than $684 per week; (ii) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (iii) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Pursuant to 29 C.F.R. § 541.605, an employee will be considered to be paid on a "fee

basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion.

52. An administrative exemption in this matter fails at the first element as Plaintiff was neither paid on a salary basis nor on a fee basis. Plaintiff, as evidenced by **Exhibit C** (introduced below), was paid on an hourly basis for all hours worked on behalf of Green. As such, Plaintiff was not exempt from the FLSA for her work performed for the benefit of and in her capacity as officer manager for Green.

53. The FLSA also contains an exemption from overtime for "domestic workers" who provide companionship and other services to individuals who were unable to care for themselves, and also states an exemption for live in domestic service workers. See 29 U.S.C. §§ 213(b)(21) and 213(a)(15).

54. In October 2013, the United States Department of Labor determined that these exemptions do not apply to domestic-service workers employed by third-party agencies or employers.

55. Beginning on January 1, 2015, the regulations provide that domestic-service workers employed by third-party agencies or employers are not exempt from the FLSA's minimum wage and overtime requirements. 29 C.F.R. § 442.109(a).

56. As of January 1, 2015, all domestic-service workers employed by third-party agencies or employers are entitled to overtime compensation at an hourly rate of 1.5 times the employee's regular rate of pay for hours worked over forty (40) in a work week.

57. Plaintiff is a domestic-service worker employed by Spring, which is a third-party agency. As such, Plaintiff is not exempt from the FLSA for her work performed for the benefit of and in her capacity as an HHA/PCA for Spring.

58. Since July 2019, Plaintiff has worked more than forty (40) hours per workweek for Spring as

an HHA/PCA without receiving proper overtime compensation for her overtime hours worked.

59. Plaintiff has also worked forty (40) hours per week contemporaneously for Green.

60. Plaintiff is owed substantial overtime compensation at rate to be determined in conformance with 29 C.F.R. § 778.108 given the joint employer status of Plaintiff as employed by both Companies and at the direction of all Defendants.

61. An example of Plaintiff's paystub illustrating the contemporaneous work is attached hereto as **Exhibit C** and incorporated herein by such reference.

62. The paystub in **Exhibit C**, dated October 30, 2020, for the 13 day pay period starting October 12, 2020 and ending October 25, 2020, overlaps the exact same time period in **Exhibit B**, and illustrates that Plaintiff worked 80 hours for Green in the same period she worked 110 hours for Spring (roughly 90 hours per week, if split evenly).

63. As a joint employer of Plaintiff, Green should have compensated Plaintiff at one-and-a-half times her regular rate of pay, which for this position with Green, was one-and-a-half times $20.00, or $30.00 per hour.

64. Because of Defendants failure to pay Plaintiff the overtime compensation required by law, Defendants have violated the provisions of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2).

65. Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Plaintiff proper overtime compensation for all hours worked over forty (40) per workweek.

66. At all times during Plaintiff's period of employment, Defendants knew or should have known about the FLSA time-and-one-half overtime rate requirement.

67. Defendants knew or should have known that its failure to pay Plaintiff at the FLSA required time-and-one-half rate for overtime hours worked more than (40) per week constituted a direct

violation of the FLSA overtime pay requirement.

68. The exact reason that Defendants knew or should have known of all FLSA overtime pay requirements is because on August 20, 2020, Defendants (Spring and Ms. Hakami) were sued for essentially the same type of overtime violations under the FLSA by Ms. Fatma Karimova in this District Court, *Karimova v. Spring Homecare Corporation*, EDVA Civil Action No. 1:20-cv-00966, which was settled between the parties, as approved by this Court, and dismissed on December 30, 2020 ("Prior Lawsuit"). Defendants (Spring and Ms. Hakami) were represented by counsel in such lawsuit. Instead of correcting overtime violations moving forward, Defendants concocted their scheme during the Prior Lawsuit, still refusing to pay their employees the correct overtime rate despite actual knowledge thereof, and as discussed below, evolved their scheme subsequent to the Prior Lawsuit. Without further involvement by this Court, it is clear that Defendants will not cease their willful violations of the FLSA.

69. Beginning in or around March 2022, fourteen (14) months after the Prior Lawsuit settled, Defendants changed their payroll polices to correctly pay Plaintiff, at least, the correct overtime pay for every overtime hour designated as O/TIME – HRLY". Defendants, however, continued to pay Plaintiff incorrectly for hours designated as "RESP – HRLY". This adaptation is identified in the example paystub attached hereto as **Exhibit D** and incorporated herein by such reference.

70. The paystub in **Exhibit D**, dated April 1, 2022, for the 13 day pay period starting March 14, 2022 and ending March 27, 2022, illustrates that Plaintiff worked 149 hours in 13 days, which at worst consisted of 69 hours of overtime pay (assuming at least 40 hours per week over 2 weeks). Plaintiff's regular rate of pay identified therein was $13.00 per hour. Plaintiff, pursuant to the FLSA, should have received $19.50 per hour for the 69 hours of overtime pay, however classified. He did not. Plaintiff received $19.50 per hour for 18 overtime hours designated as "O/TIME –

HRLY", but only received her regular rate of pay identified therein of $13.00 per hour for 51 overtime hours designated as "RESP – HRLY", again, in direct violation of the FLSA. Plaintiff is owed $6.50 per hour for every overtime hour designated as "RESP – HRLY" worked from March 14, 2022 through Plaintiff's last day of work with Spring, May 16, 2022.

71. Defendants, as of the date of this Complaint, has not paid Plaintiff back wages to correct for their willful violations of the FLSA.

72. Defendants continue to willfully violate the FLSA. Defendants merely evolved their scheme in or around March 2022.

73. In addition, subsequent to and in connection with Plaintiff's resignations from Defendants' employ, Defendants knowingly published false statements of fact to multiple parties regarding Plaintiff; specifically, Defendants made the following statements:

   a. "[Plaintiff] Nadia stole money [from Defendants] and left the company."

   b. "[Plaintiff] is under investigation and will go to jail."

   c. "[Plaintiff] Nadia shred [Green] company documents."

   d. "If [Plaintiff] Nadia didn't pay you, she deposited the money into her own account".

   e. "There is no money. [Plaintiff] Nadia and Ali stole the money. [Plaintiff] Nadia and Ali stole the PPP and COVID money".

74. As known to Plaintiff, these statements were published to one client and multiple HHA/PCAs.

## CAUSE OF ACTION

### UNPAID OVERTIME WAGES
### FAIR LABOR STANDARDS ACT – 29 U.S.C. § 201, *et seq*.

75. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.


76. Pursuant to the FLSA, 29 U.S.C. § 207, employers are generally required to pay overtime compensation at a time-and-one-half rate of an employee's regular rate of pay for hours worked over forty (40) in a workweek.

77. Pursuant to the FLSA, 29 U.S.C. § 213, at all relevant times, Plaintiff was not an "exempt employee" under the FLSA.

78. Defendants suffered and permitted Plaintiff to routinely work more than forty (40) hours in a workweek without proper overtime compensation as required by the FLSA, 29 U.S.C. § 201 *et seq*. and its implementing regulations.

79. Defendants knew, or showed reckless disregard of the fact, that they failed to pay Plaintiff proper overtime compensation in violation of the FLSA.

80. Defendants' failure to comply with the FLSA overtime protections caused Plaintiff to suffer loss of wages and interest thereon.

81. Plaintiff is entitled to unpaid overtime wages at time-and-one-half an employee's "regular rate" to be determined under 29 C.F.R. § 778.108 given the joint employer status, liquidated damages, pre and post judgment interest, and attorney fees and costs, under the FLSA.

## COUNT II
### (Defamation; Defamation *Per Se*)

82. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

83. Defendants defamed Plaintiff by falsely publishing the following statements:

   a. "[Plaintiff] Nadia stole money [from Defendants] and left the company."

   b. "[Plaintiff] is under investigation and will go to jail."

   c. "[Plaintiff] Nadia shred [Green] company documents."

   d. "If [Plaintiff] Nadia didn't pay you, she deposited the money into her own account."

  e. "There is no money. [Plaintiff] Nadia and Ali stole the money. [Plaintiff] Nadia and Ali stole the PPP and COVID money".

84. These statements were published to multiple parties after Plaintiff's resignations from the Companies, including, as known to Plaintiff, one client and multiple other HHA/PCAs.

85. These statements are not only false but defamatory, explicitly and by implication.

86. Defendants acted with actual malice when publishing these statements, knowing that these statements were unambiguously untruthful.

87. Plaintiff did not steal money from Defendants. Ironically, it is Defendants who stole money from Plaintiff, as discussed supra vis-à-vis Plaintiff's FLSA claim. Defendants also failed to use the PPP money to pay Plaintiff as well as the other HHA/PCAs.

88. Defendants' false publications against Plaintiff impute Plaintiff's unfitness to perform her duties as an employee and want of integrity in the discharge of her duties, as well as assertions of a criminal violation (theft) she did not commit, and thus, are defamatory *per se*.

89. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of reputation, loss of income, and expenses, in an amount to be proven at trial.

90. The aforementioned acts of Defendant were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

91. Plaintiff also seeks her reasonable attorney fees for this tort claim pursuant to *Kemp v. Miller*, 166 Va. 661, 661, 186 S.E. 99 (1936), *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92 (1999) (explaining that a party can recover attorneys' fees in a case involving fraud <u>or when "an injury is wanton or malicious and exemplary damages are recoverable</u>." (emphasis added)), and *St.*

*John v. Thompson*, 299 Va. 431, 435, 854 S.E.2d 648, 651 (2021).

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial for all issues triable by jury, including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

## RELIEF SOUGHT

**WHEREFORE**, the premises considered, Plaintiff respectfully prays for relief as follows:

A. Judgement against Defendants for violation of the overtime provisions of the FLSA under Count I;

B. Judgment that Defendants' violations of the FLSA were willful under Count I;

C. An award to Plaintiff in the amount of unpaid overtime wages, as determined under 29 C.F.R. § 778.108, and liquidated damages for her Count I;

D. Judgment against Defendants for defamatory remarks made regarding Plaintiff in an amount to be determined at trial for her Count II;

E. An award to Plaintiff in the amount of $350,000.00 as punitive damages for her Count II;

F. An award of pre- and post- judgment interest;

G. An award of reasonable attorneys' fees and costs to be determined by post-trial petition; and

H. Such further relief as the Court deems necessary and appropriate.

Dated: July 15, 2022                                                       Respectfully submitted,

                                                                                                  By Counsel

                                                                                                  /s/ _Robert Powers_____
                                                                                                  Robert Powers (VSB No. 80822)
                                                                                                  Steven Anderson (VSB No. 93037)
                                                                                                  MCCLANAHAN POWERS, PLLC

>3160 Fairview Park Drive, Suite 410
>Falls Church, VA 22042
>Telephone: (703) 520-1326
>Facsimile:  (703) 828-0205
>Email: rpowers@mcplegal.com
>            sanderson@mcplegal.com
>            vcaballero@mcplegal.com
>*Counsel for Plaintiff*

## **CERTIFICATE OF TRANSMISSION**

I hereby certify that the forgoing COMPLAINT with EXHIBITS are being electronically transmitted via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/ on the date noted below. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: July 15, 2022                                              By:/s/ _Robert Powers_____
                                                                                    One of the Attorneys for Plaintiff